Good morning. I'd like to reserve two minutes for rebuttal. May it please the court, my name is Manuel Murdock. I represent Cody Williams and Mr. Williams' Fourth Amendment rights were violated in this case when officers searched or seized him and then searched him without justification. In this case, Mr. Williams filed a motion to suppress the evidence that the officers discovered when they searched him. And the district judge denied his motion and used three grounds to justify his decision. We believe all three of those were in error. The first one that the judge mentioned was that the search of Mr. Williams was justified as pursuant to a valid Terry stop. We concede that a Terry stop was justified in this case. However, we don't believe that a search or a pat-down search was justified as part of that Terry stop. Officers, when they execute a Terry stop, may do a pat-down search of a suspect if that suspect, if there's reasonable suspicion to believe that that suspect is In this case, there was no justification for that conclusion. How was there not justification when he had a crowbar? I mean, a call had been made to the police, as I understand it, that somebody suspected a burglary and that they identified a person in their backyard or near their backyard holding some item. And I think, I can't remember if they reported that it was a crowbar. But when the police arrived, he's holding a crowbar. I believe that's your client. And it seems like that would be a reasonable basis that some crime was underfoot. No doubt. I believe that they, once again, were justified in doing a Terry stop. However, I do not believe that the officers were justified in presuming that he was armed and dangerous. And because he was holding a crowbar, the way I view it is a crowbar is not a weapon per se. It's a tool. And just because he's holding a crowbar doesn't give rise to the presumption that a person holding a crowbar is dangerous. In addition to that, the call never mentioned anything that he was, that the person they were calling about was being aggressive or being dangerous or that the crowbar was being used as a weapon. Counselor, I agree that crowbar could be a tool, but doesn't it depend on context? And was there any context here that suggested your client was using the crowbar as a tool? Pardon? I'm sorry. Was there any context here? I mean, was he, you know, using, that he was the crowbar as a tool for legitimate purposes versus the crowbar for potentially as a weapon or, and, or to commit a crime? Well, that's just it. There was, all the officer saw was he was holding a crowbar. There was no other context in it other than they were responding to a report of a suspicious person carrying a crowbar. Well, doesn't base law suggest that daytime crimes of this nature often involve some use of violence? And so that's part of the context. And also the clothing that he was wearing didn't make it so that an officer could easily observe that he didn't have a weapon. He had a trench coat on or something. I believe that, so that would obscure if he had a weapon on him. So aren't, aren't those things that an officer can think of in terms of Well, I believe that just because a person has a trench coat on would not authorize officers to presume that that person's. Sure, but that's not the only factor that they're looking at in this context. It's one of many. Yes. And if I may, I'll, I guess I'll, I'll start going through one by one that I see. It was in daytime. They've had a very good view of him. He wasn't active, acting aggressive when the officer saw that. And it was wintertime. I mean, wearing a trench coat is not that unusual. There were, there was nothing about that trench coat that would indicate that there was a weapon underneath it. No unusual bulges or anything like that. And so I believe that the, the in the case law, things like sudden movements or being threatening, the type of crime that this is called into, those kinds of things may give officers a justified belief that this person is dangerous, but that wasn't present in this case. So I think you make some reasonable points. Let's turn to a search incident to arrest. So there's a video in this case. I've watched it. I'm sure my How is it that the officers did not have a basis to arrest him for resisting them? They'd given him commands. He wasn't complying. And then when they try to handcuff him, he's actively pulling away. How does, how do they not have the basis to arrest him? Because if they have the basis to arrest them, they can do a search incident to arrest. I agree. I don't believe they have the, the probable cause to arrest him for the crime of not completely, but reasonably so. The judge, as he made his decision, the way he interpreted the statute, I believe was that he required strict obedience, absolute obedience to the officer's commands. What Mr. Williams did is he stopped when they told him to. He did drop the crowbar after they told him to three times. The only thing he didn't do was advance towards them like they told him to do. He was frozen. My contention is that if a person is responding reasonably to officer's orders, even if it's not perfect compliance, they still haven't violated the statute. Just because we're dealing with human beings here. We're not dealing with machines who do exactly as they're told. Humans take time to process things. Humans perceive things differently. And I believe that we can tolerate that in terms of people obeying police orders. So is it your position that the video demonstrates that he was cooperative with the handcuffing when it got that far? No. So why isn't that a basis for arrest for resisting an officer right then? Well, my understanding is that they could handcuff him if they had probable cause to arrest him in the first place. My contention is that they didn't have a probable cause to arrest him because he was being compliant with their orders. And so his resistance, I think, was justified under these circumstances. But you have, I think you have acknowledged in your description of the facts that he wasn't being compliant. He had to be told multiple times. And then he never did move in the direction that they required him to move multiple times. He never did that. Yes. They had to come upon him. And that's the moment that they decide to handcuff him. Yes. His lack of compliance in those areas, I believe, was reasonable under the circumstances and didn't rise to the level of a violation of the law. Understand. Do you want to reserve the balance of your time? Yes. Thank you. May it please the Court. I'm Jack Haycock, an assistant United States attorney from Idaho. The officers were dispatched to the call and they were indeed told that the defendant had a crowbar, that there was possibly a nearby homeowner where he was found had called in on 9-1-1 to report it, also reported that he was wearing a trench coat. The officers arrived and the defendant was there, as described, trench coat, crowbar. And they beckoned him to come and talk to them. And he stood holding his crowbar. They beckoned him again and he stood. And then In fairness, those repeated requests happen in like seven seconds or something. It's not as though this is an extended period where they're trying to coax him. It's like, come, come, come. He's not. And so then they put hands on him. In fairness, yes, Your Honor. It happened fairly rapidly. I saw a reference in the excerpts, excerpt 037, where it was characterized as nine seconds, but it was very quickly. Well, and they took him down right away. They did, Your Honor. But the seven seconds or the nine seconds, there was a lot going on with the officers there. They sensed immediately that he was not cooperating. They were, he already had one weapon. They were concerned that he had another weapon. And he just, he never did, through this whole thing, cooperate with them and follow their commands. It seemed to, it seemed to compound and develop and become more and more resistant. I guess, I mean, be curious to see if you have any case that you can point to that kind of supports this, that this was a voluntary stop because even though the officers here drew their tasers and immediately took Mr. Williams to the ground and arrested him. And I think under our case law, and I think it's Washington versus Lambert, under ordinary circumstances, when the police have only reasonable suspicion to make an investigatory stop, drawing weapons and using handcuffs and other restraints will violate the Fourth Amendment. So I'd like to see what your best case is to justify. Your Honor, there was, there was a case cited by the district court in his decision at excerpt 082, State versus Orr. And in that case, it was a DUI stop. And the one officer tried to persuade the defendant to get out of the car so they could proceed with their investigation. It was still a Terry stop at that point. And he refused. Another officer came to assist and the defendant stiffened his body and prevented them from getting him out of the car. And the Idaho court in that case, under the law, was resisting. And so at the point, as the district court held here, where the defendant failed to drop his crowbar right there, that was a resisting. He did not follow their orders. And then he just kept resisting throughout this thing where the officers went up and, I'm sorry, tried to grab his arms. And he resisted there. And then the officers at that point had probable cause for an arrest for resisting. And then they made that decision and took him to the ground and handcuffed him. Well, at what point do you think they had probable cause to arrest him? Well, I think the district court got it right. I think the district court said that when he refused to drop that crowbar within the nine seconds. I think it's, I'm not exactly sure where the nine seconds ended. It was, I think it was where he dropped the crowbar at nine seconds. I think so. And so, again, I'm just curious when you think the probable cause existed for his arrest? Well, I think, I think the district court said it was when he refused to drop the crowbar the first time, the second time. And then there's a probable cause, and that's what the district court held. But then he refused to move away from the crowbar. There's another one. And then when the officers approached, he pulled away from them. The officers were worried about the van running in the background. They thought he was going to run to that. And then they had to grab him. And then he continued to resist when they wanted to take him to the ground. A whole continuum there, and he was resisting the whole time. But I think the district court got it right. When he refused to drop the crowbar, that first time, that second time, that was resisting under the Idaho statute. So the, the... It seems that the district court had some concern over the extent of the search and whether or not the officers may have exceeded the scope of the search. Of the Terry, I'm sorry, of the Terry search. And the district court then focused on the probable cause based on this Idaho statute or, you know, code violation. What's your comment on the, on the scope? It doesn't look like they're appealing the scope of the Terry stop search, but I'd be curious to see what your comments were on that. Well, the district court did express concern. And the officer, at least one of the officers, was there when the district court spoke. And it was as if the district court was having a teaching moment with the officer that maybe there might have been some other way to handle this. And so the officer was, was lectured, hopefully corrected. Perhaps he will give some thought next time to maybe some other aspects here. But at the same time, this, this seven or nine seconds, there was a lot going on. These officers were afraid that they were, that the defendant might have another weapon. He was acting as if he was hiding something. And, and the officers know this, this officer had over 20 years experience. He knows that if he lets his guard down for a moment, he may be looking at a gun. He may be getting shot. His partner may be getting shot. So I would say that the officers did the best they could at the time. The judge has, has made a corrective effort with them. But then the judge followed the law and concluded that there was probable cause at the moment that the defendant failed to drop his crowbar, again, failed to drop his crowbar. And then the defendant just continued not cooperating with the officers. It was a violation of the, the resisting statute. And, and the court concluded at that time that there was probable cause for an arrest. And thus the gun was seized on a search pursuant to a, to an arrest. And does it matter to us that the, the judge's basis is different from the officer's testimony for their reason that they gave for why they arrested or took him down, took down this individual? Should that matter to us? I, I don't think so because, Your Honor, the judge pointed out that, that it's, it's, it's a legal, it's a legal definition. It's a legal decision. The judge can look at the facts and make his own, come up with his own basis for when there was probable cause and why there was probable cause. And the officers out in the field, you know, do what they do in the heat of the moment, but the judge can make his own independent decision from the facts about when probable cause arose and, and when the individual was placed under arrest. Now, I just had a quick question on the ineligible discovery exception. What, in the government's view, in your view, the, the, the district courts that this, that this discovery of the, of the, of the gun would have been inevitable, but I'm, I'm curious, is it inevitable to the Terry spot or inevitable to the probable cause termination and arrest? I think it's inevitable under the Terry stop, Your Honor. Because had the defendant, the, that's where the officers were obviously going. They wanted to talk to the defendant and, and almost certainly make a pat down and check him for weapons because he already had a weapon. He was wearing that big coat. They couldn't see what he had underneath it. Although the officers didn't, didn't talk, talk about the big coat. They didn't. But once again, Your Honor, I, I think the judge can look at those facts. And, and make a decision about what might have been a basis for a Terry stop. And I, I, it, it appears that the officers were headed toward a Terry stop and a pat down. Almost certainly, that's their training and that's what they would have done in this case. But the defendant would not submit. Therefore, it proceeded into a handcuffing and so forth. But had the defendant submitted to a Terry stop, they inevitably would have found that gun in that pocket of that big heavy coat. Thank you very much. Thank you. Government respectfully requests that the court affirm the conviction and sentence. Thank you. Thank you. Counsel brought up the point that Mr. Williams was acting as if he was hiding something during this. I see it differently. To me, he was acting scared. The officers, from the very beginning of this, were aggressive with him. They were advancing on him continually with the taser drawn, trained on him. To me, he was frozen and figuring out what to do here. I don't see any of his behavior acting as if he were hiding something. He didn't try to flee. He wasn't reaching for anything, any other weapons. That's why I don't believe the officers were justified in the belief that he was armed and dangerous here. With regard to the inevitable discovery, I don't believe they would have ever got to a pat-down search because the conditions or the requisites just weren't present in this case. Pat-down search was not justified, would never have been justified under these circumstances. I believe the inevitable discovery doctrine would not justify the search. That's all I have, unless you have any other questions. Thank you. Thank you very much. Thank you both for your oral argument here today. The case of United States of America versus Cody Miller Williams is submitted.
judges: MURGUIA, FORREST, SUNG